**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GEORGE FERGUSON, | ) | |
| | ) | No. 13 C 4084 |
| Plaintiff, | ) | |
| v. | ) | Judge Sara L. Ellis |
| | ) | |
| CITY OF CHICAGO, a municipal corporation, | ) ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT CITY OF CHICAGO'S RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW**

Now that all the evidence has been heard, this Court is now in position to enter judgment as a matter of law because Plaintiff George Ferguson has no viable claim against Defendant City of Chicago. As the City set forth in its first Rule 50(a) motion, there are simply no relevant factual disputes that need to be resolved by the jury because Plaintiff has failed to provide a legally sufficient evidentiary basis to support his failure to accommodate claim under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.* (the "ADA"). But now that the City has presented its defense, there is another basis for entering judgment as a matter of law in its favor: there is no dispute that Plaintiff could not continue to work as a Watchman without posing a direct threat to the health and safety of himself and others.

The Court should therefore enter judgment as a matter of law in the City's favor because Plaintiff failed to adduce a legally sufficient basis for a reasonable jury to find in his favor on the paramount element of his ADA claim. Specifically, Plaintiff presented insufficient evidence that Plaintiff was qualified to work as a Watchman with or without reasonable accommodation under the ADA. Moreover, the City demonstrated conclusively that had Plaintiff's continued working as a Watchman would have placed at risk his own health and safety – as well as others.

Accordingly, the Court should enter judgment as a matter of law in the City's favor pursuant to Federal Rule 50(a).

## ARGUMENT

Rule 50(a) permits a Court to enter judgment as a matter of law if "there is no legally sufficient evidentiary basis for a reasonable jury to find" in favor of a party. FED. R. CIV. P. 50(a)(1). In other words, judgment as a matter of law is appropriate where a plaintiff has not presented enough evidence to allow a rational jury to find in his or her favor. *See Massey v. Blue Cross-Blue Shield of Ill.*, 226 F.3d 922, 924-25 (7th Cir. 2000). In evaluating a motion for judgment as a matter of law, the Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in his or her favor. *Alexander v. Mt. Sinai Hosp. Med. Ctr.*, 484 F.3d 889, 902 (7th Cir. 2007). This standard is fundamentally the same as summary judgment, except the Court now knows exactly what evidence was put before the jury. *See Massey*, 226 F.3d at 924-25.

**I.     Plaintiff has not submitted sufficient evidence that he was qualified with or without an accommodation under the ADA.**

   **A. Plaintiff failed to present sufficient evidence that he could perform the essential functions of the Watchman position.**

No reasonable jury could conclude that Plaintiff was qualified for the Watchman position with or without an accommodation under the ADA. *See Brumfield v. City of Chi.*, 735 F.3d 619, 631 (7th Cir. 2013) ("[T]he ADA defines the term 'qualified individual' to mean 'an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'") (quoting 42 U.S.C. § 12111(8)) (emphasis removed) *see also Basith v. Cook Cty.*, 241 F.3d 919, 927 (7th Cir. 2001) ("The ADA only protects a 'qualified individual with a disability.'").

Under the ADA, a "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Thus, to prevail on his claim, Plaintiff was required to adduce sufficient evidence that he could perform the essential functions of the Watchman position with or without a reasonable accommodation at the time of the employment decision at issue. *See Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1002-03 (7th Cir. 1998).

Here, Plaintiff failed to come forward with sufficient evidence to make such a showing. As this Court has already held, patrolling is an essential function of the Watchman position. (*See* Dkt. # 89, 10/13/15 Mem. Op. & Order at 15 ("There is no factual dispute that patrolling is an essential element of the Watchman position.").) And at trial, the undisputed evidence (including Plaintiff's admission)[1] demonstrates that the essential duties of the Watchman position required Plaintiff to be able to physically patrol the premises – to sit, stand, walk, drive, go up and down stairs, and respond to emergency situations. (Tr. 137:12-17; 516:25-517:16.)

The undisputed evidence at trial establishes that, as of October 2012, Plaintiff was severely or completely limited in his ability to walk, to climb, to drive, and to rise unassisted after a fall – all of which were required to patrol. Specifically, Plaintiff admitted – and other evidence confirms – that he started using a cane in 2008 and that beginning at least in 2012, he could not climb stairs without assistance; and that, as of at least September 2012, he had to wait thirty minutes before he could even attempt to stand up after a fall. (JX48; Tr. 175:3-9; 18-173:1-6; 177:20-24; 311:13-312:16, 20-313:1; 333:11-334:5; 339:16-22.) Indeed, it was

---

[1] This admission and others occurred at trial on Thursday June 23, but the transcript from that day is not yet prepared and available. The City can supplement this motion with the relevant record cites if

3

Plaintiff's unfortunate fall in September 2012 that highlighted his inability to perform the essential functions of the Watchman position. (Tr. 172:18-173:1-6.)

Notably, Plaintiff's evidence at trial was dedicated almost exclusively to his ability to do the job *before* his fall in September 2012. The *only* evidence adduced regarding Plaintiff's post-fall ability to perform the essential functions of the job was the fact that he returned to work for a short time before being placed on medical leave. But that evidence proves nothing because Plaintiff was *instructed not to patrol* until his fitness for duty could be evaluated. (Tr. 338:23-339:4; 430:21-431:25.)

The evidence at trial *during the relevant time frame*, i.e., after Plaintiff's fall, revealed that Plaintiff never established that he could patrol. This was confirmed when Plaintiff took a fitness for duty ("FFD") examination on October 2, 2012 (JX02), which revealed that he could *not* perform the essential functions of his job (Tr. 180:16-18). Specifically, Dr. Schlotzer found that Plaintiff had significant weakness in his lower extremities, and that he could not rise unassisted after a fall, squat, ambulate unassisted, or drive due to significant weakness and muscle loss in his feet and lower extremities. (JX02.) And from that point forward, there is *no* evidence that sufficiently shows how Mr. Ferguson could perform the essential functions of his job.

Nevertheless, if Plaintiff disagreed with the results of his FFD exam, he could have submitted medical documentation from his personal physician showing that he was able to perform his essential job duties safely, with or without accommodation, or he could have undergone a second FFD exam at the City's expense. (Tr. 219: 16-19.) But Plaintiff failed to

---

necessary.

do either: he did not begin seeing a medical doctor to treat his muscular dystrophy until March 2013, and he never requested or attended a second FFD exam (Tr. 219:24-220:4).

Instead, after his FFD exam, Plaintiff presented documentation to the City which initially was insufficient and later corroborated the results of his FFD exam. In November 2012 (JX06), February 2013 (JXO7), and June 2013 (JXO8), Plaintiff submitted documentation to the City from his chiropractor, Dr. Solomon Liburd (Tr. 62:17-65:18; 66:4-25), who is not a licensed medical doctor (Tr.71:25-72:1; 216:24-217:1); was not treating Plaintiff's muscular dystrophy (Tr. 59:3-4; 72:17-23; 73:13-15; 74:16-18); has never treated patients with muscular dystrophy (Tr. 73:10-12); has not been trained to treat muscular dystrophy (Tr. at 73:4-7); and thus could not (and did not) attest to the precise limitations resulting from Plaintiff's disability. Significantly, Dr. Liburd admitted that he had not even examined Plaintiff before submitting these forms (Tr. 76:7-12; 79:13-15; 81:15-17; 81:13-19), and that he made his recommendations based solely on Plaintiff's personal description of his duties, a description that failed to disclose that Plaintiff was required to patrol by foot (Tr. 76:21-77:1; 77:14-78:1; 79:13-80:1). Relatedly, Dr. Liburd confirmed that he *never* performed a fitness for duty examination of Plaintiff. (Tr. 82:2-5.)

Plaintiff did not seek treatment from a medical doctor until March 2013, even though he had been advised on two separate occasions by the Supervisor of Labor Relations for his Department, Kevin Murphy, that his notes from Dr. Liburd were deficient. (Tr. 218:25-219:10; 220:8-19.) Plaintiff then submitted several documents to the City from his personal doctor, Dr. Akhtar Parvaiz, which *confirmed* Dr. Schlotzer's findings that Plaintiff had significant weakness in his lower extremities and could not rise unassisted after a fall. (Tr. 387:14-25.) Dr. Parvaiz's initial assessment in March 2013 noted that Plaintiff had problems with repetitive

5

use of foot controls, standing, walking, squatting, twisting, bending, and climbing. (JX72; Tr. 372:10-13; 394:22-395:21.) Indeed, while Dr. Parvaiz released Plaintiff to full duty in June 2013, he clarified in a note a week later that Plaintiff was "totally disabled and unable to work" for the period of March 12, 2013 to June 25, 2-13." (JX11; Tr. 227:24-228:3; 373:22-374:8; 400:4-9.) Moreover, Dr. Parvaiz later indicated in September 2013 that Plaintiff could not "get up after a fall" or perform any duty requiring repetitive foot controls, that he was restricted in his ability to drive, and that he could work only in a sedentary capacity. (JX16; Tr. 378:22-379:2; 409:14-411:20; 532:14-533:15.) Tellingly, like Dr. Liburd, Dr. Parvaiz made all of his recommendations without having read or reviewed the City's job description before making his determinations – and based *only* on what Plaintiff had told him, which was that the job required only sitting and watching monitors. (Tr. 381:13-21; 393:23-394:3; 399:24-400:3l 402:21-24.)

Significantly, none of the doctors' notes Plaintiff submitted to the City stated that he was able to return to his job *as a Watchman* and perform the essential duties of the job. In fact, both Drs. Liburd and Parvaiz failed to even review the job description for the Watchman position, relying instead on Plaintiff's inaccurate portrayal of his job duties as one that did not include patrolling.

Neither Plaintiff's uncorroborated assessment of his physical abilities nor the unreliable testimony of his chiropractor – who did not treat Plaintiff for his muscular dystrophy (Tr. 59:3-4; 72:17-23; 73:13-15; 74:16-18) – or his personal physician – who did not begin treating Plaintiff until March 2013 and does not know his actual job duties – are sufficient to establish that he could perform the essential functions of his job. *Boback v. Gen. Motors Corp.*, 1997WL 3613, at *3 (6th Cir. 1997) ("[A] plaintiff's uncorroborated belief in his physical prowess is not enough to counter affirmative evidence to the contrary."); FED R. EVID. 701, 702.

6

And tellingly, Plaintiff presented no corroborative expert testimony to substantiate his claim that he could have returned to the job.[2]

> **B. Plaintiff failed to present sufficient evidence establishing any reasonable accommodation that would have allowed him to perform the essential functions of the Watchman position.**

Plaintiff did not present at trial any competent evidence to support his contention that a low clearance vehicle, or any other accommodation such as a motorized scooter, would allow him to perform the essential job duties of a Watchman. *See Basden v. Prof'l Transp.*, 714 F.3d 1034, 1037 (7th Cir. 2013) ("[I]t is the plaintiff's burden to produce evidence sufficient to permit jury to conclude that she would have been able to perform the essential functions of her job with a reasonable accommodation."). "[R]easonable accommodations are '[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable [a qualified] individual with a disability…to perform the *essential functions* of that position[.]" *Reeves ex rel. Reeves v. Jewel Food Stores, Inc.*, 759 F.3d 698, 701 (7th Cir. 2014) (citing 29 C.F.R. § 1630.2(o)(l)(ii)) (emphasis added).

As the evidence at trial made clear, simply providing Plaintiff with a lower profile vehicle, lower stairs with a handrail, or a motorized scooter are not reasonable accommodations because the essential duties of the Watchman position required Plaintiff to be able to physically patrol the premises – to sit, arise from a fall, stand, walk, drive, pull gates or doors closed, go

---

[2] While acknowledging that Plaintiff's evidence that he was qualified was "limited," the Court denied summary judgment on the claim, citing then-unchallenged testimony from Plaintiff's proposed expert Thomas Grzesik as potential evidentiary support for Plaintiff's claim that he could perform the essential functions of the Watchman position. (*See* Dkt. #89, 10/13/15 Mem. Op. & Order at 17 & n.7.) But the Court subsequently granted the City's motion to bar Grzesik from testifying at trial, stripping Plaintiff of any semblance of independent evidence to establish that he was qualified under the ADA.

up and down stairs, investigate, report, and respond to emergency situations. (JX01; Trial Tr. 170:18-24; 171:3-13; 172:7-13, 18-173:6.) And as already discussed, Plaintiff could not perform these duties. The proposed accommodations would not have changed that fact. (Tr. 157:14-17; 166:8-12; 437:24-438:21; 439:24-440:6; 516:25-518:6.) At best, these accommodations would have enabled Plaintiff to do only a portion of his job's essential duties.

Moreover, the evidence at trial established that many of the sites were large and complex, with various buildings, facilities, lots, and terrain (Tr. 284:1-290:10; 291:1-21; 294:1-296:14; 297:22-24; 298:16-299:11; 508:9-509:10; 548:3:25), and there was only one Watchman assigned to each location at any given time (Tr. 280:10-11; 423:19-25). And because of the need to adapt to changing circumstances and security concerns, the Department of Security required Watchmen to be able to perform the *same* essential duties and no matter where they were assigned to work. (Tr. 258:7-24; 260:4-8; 424:1-425:21.) Thus, in light of Plaintiff's undisputed limitations, his proposed accommodations would have required 2FM to fundamentally alter the Watchman job just for Plaintiff, which is not required under the ADA. *See Brumfield*, 735 F.3d at 633 ("Nothing in the ADA requires an employer to accommodate the employee so that she may perform any nonessential function of the job at issue that she chooses.") (quoting *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 577 (7th Cir. 2001) (internal punctuation marks removed)). For example, 2FM would have had to hire or assign another Watchman to cover some of Plaintiff's job duties (Tr. 428:17-429:10), which could leave another 2FM site vulnerable to theft or destruction of City property and equipment (Tr. 430:8-16). But 2FM is not required to remove some of the most important aspects of this job. (Tr. 484:20-485.)

Even putting aside all of this evidence, Plaintiff still failed to demonstrate that the proposed accommodations were reasonable. Using a lower profile vehicle was not a reasonable accommodation even if that was his only requirement because Plaintiff failed to prove conclusively that he could even drive safely at any time after the fall; thus, a low clearance vehicle does not address Plaintiff's physical limitations. As for a motorized scooter, the trial demonstrated conclusively that it was unworkable due to the rough terrain of the relevant sites, inclement weather, and the need to navigate stairs and open gates. (Tr. 318:7-10; 501:1-15; 502:10-17; 517:21-518:9.) Thus, the only factual evidence in the case demonstrates that a motorized scooter was *not* a reasonable accommodation in this case. Moreover, Plaintiff elicited *no* evidence as to the reasonableness of lower stairs or guardrails.

Because Plaintiff is not able to perform the essential job duties of the Watchman position safely, he cannot meet his burden of proving that he is a qualified individual with a disability under the ADA. But even if Plaintiff could prove that he is a qualified individual, the only accommodations he proposed are unreasonable. *See Majors v. Gen. Elec. Co.*, 714 F.3d 527, 534 (7th Cir. 2013) ("[The plaintiff] bears the burden of establishing that she could perform the essential functions of the position with or without reasonable accommodation, and can't meet this burden if the only accommodations suggested were unreasonable.").

II. **The City demonstrated conclusively that Plaintiff could not continue to work as a Watchman without posing a direct threat to the health and safety of himself and others.**

Even if Plaintiff adduced sufficient evidence to present his claim to the jury, he offered no rebuttal to the City's "direct threat" affirmative defense. *See Darnell v. Thermafiber, Inc.*, 417 F.3d 657, 660 (7th Cir. 2005) ("An individual is not qualified if he presents a 'direct threat' to his own health and safety or that of others."). Indeed, in light of the significant, uncontrolled,

9

and permanent limitations on Plaintiff's ability to walk, to climb, to drive, and to rise unassisted after a fall, there is no accommodation that would have allowed him to perform the job duties of his Watchman position *safely*, both for himself and others. (Tr. 146:9-17; 172:18-173:1-6; 179:5-12; 203:8-20; 318:11-16; *see also* JX09.)

The evidence at trial demonstrated conclusively that Plaintiff was not being treated for his muscular dystrophy, that he was physically unable to rise immediately after a fall without assistance, that he was severely limited in his ability to drive and to walk, and that he had numerous accidents, including his September 23, 2012 work-related fall. *See Darnell*, 417 F.3d at 662 ("[W]here the plaintiff's medical condition is uncontrolled, of an unlimited duration, and capable of causing serious harm, injury may be considered likely to occur."). Although Plaintiff asserted that he was and is capable of safely performing his job duties, he provided no material medical evidence proving that. In contrast, the City adduced uncontroverted evidence regarding the serious safety concerns presented had Plaintiff continued working. (Tr. 430:8-20; 435:14-436:1.) And the City is not obligated by the ADA to wait until he seriously injures himself or others before it takes action. *See Timmons v. Gen. Motors, Corp.*, 469 F.3d 1122, 1129 (7th Cir. 2006) ("[There is] no requirement that [an] employer retain [an] employee who is likely to harm someone as a result of his disability because that would put [the] employer on a razor's edge – in jeopardy of violating the ADA if it fired such an employee, yet in jeopardy of being deemed negligent if it retained him and he hurt someone [else or himself].") (internal punctuation marks and citation omitted); *see also Darnell*, 417 F.3d at 662 ("[A]n employee with a health condition who has experienced no on-the-job episodes can still pose a direct threat to workplace safety."); *Owusu-Ansah v. Coca-Cola Co.*, 715 F.3d 1306, 1311 (11th Cir. 2013) ("[T]he ADA does not, indeed cannot, require [an employer] to forgo a fitness for duty examination to wait until a

perceived threat becomes real or … results in injuries") (internal quotation mark and citation omitted).

Thus, because there is no factual dispute for the jury to resolve regarding the direct threat to the health and safety to Plaintiff and others if Plaintiff returned to work, the Court should enter judgment as a matter of law in the City's favor.

## CONCLUSION

For the foregoing reasons, the Court should enter judgment as a matter of law in the City's favor and dismiss Plaintiff's claim with prejudice.


Dated: June 24, 2016　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　　　　City of Chicago, Defendant

　　　　　　　　　　　　　　　　　　　　　　　　By: 　/s/ Christopher R. Parker
　　　　　　　　　　　　　　　　　　　　　　　　　　　One of its Attorneys


MICHAEL BEST & FRIEDRICH LLP
Christopher R. Parker
Daniel A. Kaufman
Benjamin T. Johnson
Two Prudential Plaza
180 North Stetson Avenue
Suite 2000
Chicago, IL 60601-6710
Telephone: 312.222.0800
Facsimile: 312.222.0818

# CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2016, I electronically filed the foregoing ***Defendant City of Chicago's Renewed Motion for Judgment as a Matter of Law*** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Ernest T. Rossiello
Ernest T. Rossiello & Associates
134 North LaSalle Street, Suite 1760
Chicago, Illinois 60602
etr@rossiellolaw.com

Deja C. Nave
City of Chicago
30 N. LaSalle Street
Chicago, IL 60602
dnave@cityofchicago.org


/s/ Christopher R. Parker
Attorney for Defendant, City of Chicago
Christopher R. Parker
Michael Best & Friedrich LLP
Two Prudential Plaza
180 North Stetson Avenue, Suite 2000
Chicago, Illinois 60601
Phone: (312) 222-0800
E-mail: crparker@michaelbest.com